UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| BART K. ETHERINGTON,<br>      Plaintiff, | )<br>)<br>) |
| v. | )   CAUSE NO.: 1:19-CV-475-JVB-JPK |
| ANDREW M. SAUL,<br>Commissioner of Social Security<br>Administration,<br>      Defendant. | )<br>)<br>)<br>)<br>) |

**FINDINGS, REPORT AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE PURSUANT TO
28 U.S.C. § 636(b)(1)(B) & (C)**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Bart K. Etherington on November 10, 2019, and Plaintiff's Opening Brief [DE 13]. The Commissioner filed a response, and Plaintiff did not file a reply.

On February 4, 2020, District Court Judge Joseph S. Van Bokkelen entered an Order [DE 12] referring this matter to the undersigned Magistrate Judge for a report and recommendation on the instant briefing pursuant to 28 U.S.C. § 636(b)(1)(B). This Report constitutes the undersigned Magistrate Judge's combined proposed findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). For the following reasons, the Court recommends that the District Court reverse the decision of the Social Security Administration and remand for further proceedings.

**PROCEDURAL BACKGROUND**

On April 6, 2017, Plaintiff filed applications for disability insurance benefits and supplemental security income. Through counsel, Plaintiff later amended his alleged disability onset date to April 6, 2017. Plaintiff's applications were denied initially and on reconsideration. Plaintiff requested a hearing, which was held before an Administrative Law Judge (ALJ) on

August 7, 2018. On October 31, 2018, the ALJ issued an unfavorable decision, making the following findings:[1]

> 1. The claimant last met the insured status requirements of the Social Security Act on September 30, 2018.
>
> 2. The claimant has not engaged in substantial gainful activity since April 6, 2017, the amended alleged onset date.
>
> 3. The claimant has the following severe impairments: borderline intellectual functioning and mood disorder/depression.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. After careful consideration of the entire record, the [ALJ found] the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he can understand, remember, and carry out simple, repetitive tasks and perform work requiring only occasional decision-making, occasional changes in the work setting, and only occasional interaction with the general public, co-workers, and supervisors. These tasks must be done under specific instructions with little or no room for decision making.
>
> 6. The claimant is capable of performing his past relevant work.
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from April 6, 2017, through the date of this decision.

(AR 83-93[2]).

---

[1] These findings quote the bolded findings throughout the ALJ's decision. Internal citations to the Code of Federal Regulations are omitted.

[2] Page numbers in the Administrative Record (AR) refer to the page numbers assigned by the filer, which are found on the lower right corner of the page, and not the page numbers assigned by the Court's CM/ECF system.

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. Plaintiff then filed this civil action seeking review of the Agency's decision pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). The question before the Court is not whether the claimant is in fact disabled, but whether the ALJ's decision "applies the correct legal standard and is supported by substantial evidence." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). Under § 405(g), the Court must accept the Commissioner's factual findings as conclusive if they are supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). However, "if the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)). At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ also has a basic obligation to develop a full and fair record and "must build an accurate and logical bridge

3

between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014).

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability," which is defined as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). The ALJ follows a five-step inquiry to determine whether a claimant is disabled: (1) whether the claimant has engaged in substantial gainful activity since the alleged onset of disability, (2) whether the claimant has a medically determinable impairment or combination of impairments that is severe, (3) whether the claimant's impairment or combination of impairments meets or medically equals the criteria of any presumptively disabling impairment listed in the regulations, (4) if the claimant does not meet a listing, whether he is unable to perform his past relevant work, and (5) if the claimant is unable to perform past relevant work, whether he unable to perform any work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).

Prior to step four, the ALJ determines the claimant's residual functional capacity (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). An affirmative answer at either step three or step five leads to a finding of disability. *Briscoe ex rel. Taylor v. Barnhart*, 524 F.3d 345, 352 (7th Cir. 2005); 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001).

## ANALYSIS

Plaintiff asserts two grounds for reversal of the ALJ's decision. Plaintiff contends that (1) the ALJ erred in weighing the opinion of Plaintiff's treating psychiatrist, and (2) the ALJ erred in arriving at the RFC determination by failing to include qualitative interaction limitations.

### A. Treating Psychiatrist Opinion

Plaintiff argues that the ALJ failed to provide a logical reason for declining to afford controlling weight to the opinion of Plaintiff's treating psychiatrist, Dr. Hani Ahmad. (Pl.'s Br. 16-21, ECF No. 13).

An ALJ has an obligation to evaluate every medical opinion and explain the weight given to the opinion. *See* 20 C.F.R. §§ 404.1520c, 416.920c. For claims filed on or after March 27, 2017, such as Plaintiff's claim, the ALJ need not defer or give any specific evidentiary weight to any medical opinions. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Medical opinions are weighed by considering the following factors: (1) Supportability used by the medical source to support his opinion; (2) Consistency of the medical opinion with the other evidence in the record; (3) Relationship with the claimant, including the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship; (4) Specialization of the medical source; and (5) Other factors that tend to support or contradict a medical opinion. 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The regulations state that supportability and consistency are the most important factors to consider, and that the other three factors only require discussion if it is appropriate for the determination. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2). Regulations provide that when an ALJ is looking at the supportability and consistency of a medical opinion, these terms mean:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her

5

  medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

  (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2).

  Plaintiff contends that the ALJ failed to properly analyze the opinion of Plaintiff's treating psychiatrist, Dr. Ahmad, as required by 20 C.F.R. §§ 404.1520c, 416.920c. Dr. Ahmad provided a medical source statement in July 2018, in which he opined that Plaintiff was markedly limited in understanding and remembering detailed instructions, in the ability to interact appropriately with the general public, in the ability to ask simple questions or request assistance, and in the ability to accept instructions and respond appropriately to criticism from supervisors. (AR 581-82). Dr. Ahmad further opined that Plaintiff was markedly limited in the ability to travel in unfamiliar places or use public transportation, and that his impairment would substantially interfere with his ability to work on a regular and sustained basis at least 20% of the time. (AR 583). Plaintiff contends that the ALJ failed to discuss Dr. Ahmad's specialty, his frequency of treatment, and the importance of viewing mental health over the course of treatment and not at a single appointment. (Pl.'s Br. 20, ECF No. 13). Finally, Plaintiff asserts that, in discussing the consistency of Dr. Ahmad's report with other medical source opinions, the ALJ failed to provide a rational explanation as to why he afforded more weight to examining and non-examining medical source opinions than he afforded to the opinion of Plaintiff's treating psychiatrist. *Id.* at 21.

  In discussing Dr. Ahmad's opinion, the ALJ began by noting that large portions of the opinion were persuasive and supported by the record. (AR 92). The ALJ found that many of Dr. Ahmad's opinions regarding Plaintiff's mild and moderate limitations were supported by the

6

"lack of markedly or extremely abnormal mental status examination findings that were reported for [Plaintiff] at Bowen Center and by Dr. Ahmad since mid[-]2014." (AR 92). The ALJ also found that Dr. Ahmad's opinion regarding Plaintiff's marked limitations in understanding and remembering detailed instructions were supported by the record. (AR 92). The ALJ found that the mild and moderate limitations were further supported by Plaintiff's annual earnings (up to approximately $29,000), his IQ scores, which were "almost always in the borderline intellectual range or higher," the fact that no other medical source reported markedly or extremely abnormal mental status findings, his lack of psychiatric treatment, and the fact that he has a driver's license and is able to go out alone. (AR 92).

However, the ALJ found that other opinions provided by Dr. Ahmad in his July 2018 report were not persuasive. (AR 92). The ALJ found that Dr. Ahmad's opinion that Plaintiff was markedly limited in his ability to sustain an ordinary routine without special supervision, work with or near others without being distracted by them, complete a normal workday or workweek without interruption for psychologically-based symptoms, perform at a consistent pace, interact appropriately with the general public, ask simple questions/request assistance, accept instructions/respond appropriately to criticism from supervisors, and travel in unfamiliar places or use public transportation were unsupported by the record. (AR 92). The ALJ found that they were unsupported by the GAF score of 60 assigned to Plaintiff by Dr. Ahmad, or by the lack of markedly or extremely abnormal mental status examination findings in the progress notes from Bowen Center and Dr. Ahmad. (AR 92). The ALJ also reiterated Plaintiff's history of annual earnings as high as $29,000, his IQ scores that were almost always in the borderline intellectual range or higher, the lack of markedly or extremely abnormal mental status examination findings reported by other medical sources in the record, his lack of inpatient psychiatric treatment, the reports that

he is able to go out alone, and the inconsistency of Dr. Ahmad's opinion with those of the state agency psychologists. (AR 92-93).

As discussed above, an ALJ's opinion is entitled to substantial deference. And, while this Court will not second guess the ALJ by reweighing evidence or substituting its judgement for that of the ALJ, remand is appropriate in instances where an ALJ "cherry picks" evidence in support of an outcome, yet fails to address evidence that would undercut the ALJ's ultimate determination. *Martin v. Saul*, 950 F.3d 369, 375 (7th Cir. 2020) (ALJ improperly credited statements in medical opinion "that support[ed] a finding of non-disability" but "ignored others making plain that [the plaintiff] had serious neck and back problems"); *Plessinger v. Berryhill*, 900 F.3d 909, 915 (7th Cir. 2018) (ALJ "misconstrued (or worse, cherry-picked)" statements from medical opinion relied upon: "ALJs are not permitted to cherry-pick evidence from the record to support their conclusions, without engaging with the evidence that weighs against their findings"). Here, the ALJ thoroughly went through evidence that supported a determination that Plaintiff was not disabled. Nonetheless, there is a good deal in the record that cuts against such a determination, and this evidence received no such attention.

The Court turns first to the ALJ's consideration of the consistency of Dr. Ahmad's report. Per the applicable regulations, the ALJ was to look not only to the internal consistency of Dr. Ahmad's report, but also to its consistency with "evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). The ALJ did not consider the consistencies in Dr. Ahmad's report, or the fact that both Dr. Ahmad and Dr. Ceola Berry, an independent psychiatrist who examined Plaintiff at the Social Security Administration's request, were consistent in finding that Plaintiff's intellectual functioning negatively impacted his ability

to work. (*Compare* AR 500 (Dr. Berry's clinical impression of Asperger's[3] and finding that Plaintiff's ability to work would be "affected by the challenges of his level of intellectual functioning") *with* AR 580-83 (Dr. Ahmad's findings of the marked limitations discussed above and overall impression that Plaintiff could not work on a regular and sustained basis). This failure to compare the consistency of Dr. Ahmad's opinion with that of Dr. Berry is all the more concerning in light of the ALJ's reasoning that Plaintiff's driver's license, current employment, and the fact that he was a "poster child" at Pathfinder Services ("Pathfinder")—an agency providing services to Plaintiff—supported a finding that Plaintiff was not disabled, while neglecting to weigh the fact that Pathfinder's offered services, such as employment coaching, were necessary for Plaintiff to obtain his current job. (*See* AR 85, 112). By focusing only on the evidence in the record that supported a finding that Plaintiff was not disabled, the ALJ both engaged in the type of impermissible "cherry picking" criticized by the Seventh Circuit Court of Appeals and failed to weigh consistencies in the record that supported a finding of disability. *See Plessinger*, 900 F.3d at 915. While the ALJ discussed the accommodations Pathfinder provided, this was only done in passing and there was no analysis of how Plaintiff would fare without such services. This did not give appropriate consideration to the level of accommodation that Plaintiff was receiving to allow him to perform his current, part-time, employment responsibilities. *See Vanprooyen v. Berryhill*, 864 F.3d 567, 571 (7th Cir. 2017) (discussing "accommodations that the administrative law judge mentioned only in passing and sometimes failed to mention at all").

---

[3] Asperger's Disorder (or Asperger's syndrome) was added as a disorder separate from Autistic Disorder in the Diagnostic and Statistical Manual of Mental Disorders – IV ("DSM-IV") in 1994. However, in 2013, the DSM-V replaced Autistic Disorder, Asperger's Disorder, and other pervasive developmental disorders with an umbrella diagnosis of autism spectrum disorder. AUTISM SOCIETY, *Asperger's Syndrome*, https://www.autism-society.org/what-is/aspergers-syndrome/ (last visited Jan. 21, 2021). While Plaintiff's brief references Autism, and the ALJ's decision references Asperger's syndrome and other pervasive developmental disorders, the DSM-V recognizes all of them as being part of the autism spectrum disorder.

Similarly, when supportability is considered, there are findings in Dr. Ahmad's report that are in line with those of Dr. Berry. The ALJ found that "Asperger's syndrome, pervasive development delays, and obsessive compulsive disorder [were] not medically determinable impairments" for Plaintiff, since "other medical sources of record, including medical providers who had the benefit of actually treating" Plaintiff did not provide the same diagnoses as Dr. Berry, which included "Asperger's syndrome, pervasive developmental delays, or obsessive-compulsive disorder." (AR 84-85). While it is true that Dr. Ahmad, who treated Plaintiff, did not diagnose Plaintiff with Asperger's syndrome, Dr. Ahmad *did* diagnose Plaintiff with a mood disorder and borderline intellectual function. (AR 580). And, as discussed above, Dr. Ahmad and Dr. Berry are consistent in their view of Plaintiff's inability to work.

It bears noting that both Plaintiff's treating psychiatrist and an independent examining psychiatrist found that Plaintiff was unable to work on a sustained basis for a significant amount of time. Whether a claimant qualifies for benefits is a question for the ALJ, not the medical examiners. Nevertheless, a medical professional's view is something that the ALJ must at least consider, and is not an improper legal opinion. *Lambert v. Berryhill*, 868 F.3d 768, 776 (7th Cir. 2018) ("Whether a claimant qualifies for benefits is a question of law, but a medical opinion that a claimant is unable to work is not an improper legal conclusion. Indeed, ALJ's must consider medical opinions about a patient's ability to work full time because they are relevant to the RFC determination." (citations omitted)); *Knapp v. Berryhill*, 741 Fed App'x 324, 327 (7th Cir. 2018) ("[T]he ALJ was of the mistaken view that Dr. Kidder's opinion of Knapp's ability to work was reserved to the Commissioner. The legal question whether a claimant qualifies for benefits is reserved, but when deciding the claimant's RFC, ALJs must consider a treating physician's view that the severity of a claimant's impairments makes her unable to work.").

The Seventh Circuit Court of Appeals has broadly noted that an examining state agency physician is "unlikely . . . to exaggerate an applicant's disability." *Garcia v. Colvin*, 741 F.3d 758, 761 (7th Cir. 2013) (citing *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)). And, as stated above, an ALJ has an obligation to evaluate every medical opinion and explain the weight given to the opinion. *See* 20 C.F.R. §§ 404.1520c, 416.920c. Here, the ALJ mentioned the opinion of Dr. Berry only twice, and seemed to do away with it entirely with the cursory statement that Dr. Berry "examined [Plaintiff] only once, in May 2012[,] at the request of the Social Security Administration." (AR 84, 91). As previously noted, there are relatively new regulations pertaining to how an ALJ must consider a medical opinion for claims filed on or after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Far from removing any consideration of the potential bias, or lack thereof, that a medical examiner may hold, the new regulations specifically require an ALJ to look to, among other things, the relationship between the examiner and the claimant and the consistency of the medical opinion with other evidence in the record. 20 C.F.R. §§ 404.1520c(c)(2)-(3), 416.920c(c)(2)-(3). As such, the ALJ erred in failing to properly evaluate the opinion of Dr. Berry, especially in light of Dr. Berry's ostensibly unbiased position vis a vis Plaintiff and the fact that Dr. Berry's opinion was meaningfully consistent with that of Dr. Ahmad. Accordingly, the Court recommends remand for proper consideration of the opinions of Dr. Ahmad and Dr. Berry under the relevant regulations.

### B. Qualitative Interaction Limitations in the RFC

Plaintiff also asserts that the ALJ erred by failing to include qualitative interaction limitations in the RFC.

The RFC is a measure of what an individual can do despite the limitations imposed by her impairments. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); 20 C.F.R. § 404.1545(a).

11

The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. § 404.1527(e)(1); *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995). The RFC is an issue at steps four and five of the sequential evaluation process and must be supported by substantial evidence. SSR 96-8p, 1996 WL 374184, at *3 (July 2, 1996).; *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000).

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing' basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, at *1. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.* at *3. The relevant evidence includes medical history; medical signs and laboratory findings; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id.* at *5. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id*. The "ALJ must also consider the combined effects of all the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *see also Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003).

Plaintiff claims that the ALJ erred in arriving at the RFC determination by failing to properly account for Plaintiff's limitations in interacting with others. (Pl.'s Br. 21-23, ECF No. 13). The ALJ limited Plaintiff to occasional interaction with the general public, co-workers, and supervisors. (AR 86). Plaintiff argues that occasional is a quantitative term, which does not

account for any qualitative limitations. (Pl.'s Br. 22, ECF No. 13). Plaintiff relies on Dr. Ahmad's opinion in arguing that the ALJ should have provided for qualitative interaction limitations in the RFC. *Id.* at 23.

As this Court has previously explained, there is a difference between "occasional" contact and "superficial" contact: "'Occasional contact' goes to the quantity of time spent with the individuals, whereas 'superficial contact' goes to the quality of the interactions." *Wartak v. Colvin*, 2:14-CV-401, 2016 WL 880945, at *7 (N.D. Ind. Mar. 8, 2016). Here, the ALJ found persuasive a section in Dr. Ahmad's report noting that Plaintiff has a moderate limitation in "getting along with co-workers and peers without distracting them or exhibiting behavioral extremes" and "maintaining socially appropriate behavior." (AR 92). Further, the ALJ concluded that Plaintiff was moderately limited in interacting with others. (AR 85). However, the ALJ did not endeavor to explain how a limitation to occasional interaction—with no limitation as to the quality of contact— adequately accounts for Plaintiff's limitation in this area. This was error.

While it is perhaps true that a carefully worded RFC will result in an ALJ finding that a plaintiff is not disabled, the record at this point compels no such finding. It is not for this Court to decide whether, had the ALJ "considered the entire record, [the ALJ] might have reached the same result." *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (explaining that "the fact that the [ALJ], had she considered the entire record, might have reached the same result does not prove that her failure to consider the evidence was harmless. Had she considered it carefully, she might well have reached a different conclusion"). Accordingly, the Court recommends remand for proper consideration of any qualitative limitations Plaintiff may have in interacting with others.

## CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** that the District Court reverse the decision of the Commissioner of the Social Security Administration and remand for further proceedings.

This Report and Recommendation is submitted pursuant to 28 U.S.C. § 636(b)(1)(C). Pursuant to 28 U.S.C. § 636(b)(1), the parties shall have fourteen (14) days after being served with a copy of this Recommendation to file written objections thereto with the Clerk of Court. The failure to file a timely objection will result in waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *Willis v. Caterpillar, Inc.*, 199 F.3d 902, 904 (7th Cir. 1999); *Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994); *The Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260-261 (7th Cir. 1989); *Lebovitz v. Miller*, 856 F.2d 902, 905 n.2 (7th Cir. 1988).

So ORDERED this 21st day of January, 2021.

s/ Joshua P. Kolar
MAGISTRATE JUDGE JOSHUA P. KOLAR
UNITED STATES DISTRICT COURT